# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| PRINCE ISAAC, | No. 4:17-CV-02397 |
|---|---|
| Plaintiff, | (Judge Brann) |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## MEMORANDUM OPINION

### JANUARY 21, 2020

Plaintiff Prince Isaac, a federal prisoner presently confined at the United States Penitentiary at Lee in Jonesville, Virginia, filed a complaint pursuant to the Federal Tort Claims Act (FTCA) regarding allegedly negligent treatment he received while incarcerated at the United States Penitentiary at Lewisburg in Lewisburg, Pennsylvania.[1] In conjunction with his motion for leave to proceed *in forma pauperis*, he also filed an amended complaint raising the same claim in a more structured, typewritten form with exhibits.[2] Presently before the Court is Defendant United States of America's motion to dismiss or, in the alternative, for summary judgment, which is ripe for adjudication.[3] For the reasons that follow, the Court will deny without prejudice the motion to dismiss and take the motion for summary

---

[1] ECF No. 1.
[2] ECF No. 10.
[3] ECF No. 19.

judgment under advisement pending an opportunity for the parties to provide supplemental briefing and any additional exhibits regarding the merits of Plaintiff's FTCA claim.

## I. BACKGROUND

Plaintiff was transferred to the United States Penitentiary at Lewisburg in or around June 4, 2015.[4] Plaintiff suffers from osteochondroma which is a severe bone abnormality.[5] Plaintiff has osteochondroma in various parts of his body including his left arm.[6] Due to this condition, Plaintiff cannot bend his left arm backwards without extreme pain occurring and aggravating the osteochondroma.[7] Attached to Plaintiff's amended complaint is a medical form dated June 2, 2015, which provides, in pertinent part: "Cuff only front – permanent," "large size ankle restraints – permanent," and "Orthopedic condition requires front cuff and large size ankle restraints."[8]

Upon arriving at USP Lewisburg, Plaintiff was screened by the medical staff at which time his medical record was reviewed and a basic evaluation conducted.[9] The medical staff acknowledged that Plaintiff required a bottom bunk, that he had to be handcuffed in the front, and had to have large leg irons used on him, all due to

---

[4] ECF No. 10 at 1 (amended complaint).
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.* at 5.
[9] *Id.* at 1.

his osteochondroma.[10] Plaintiff alleges that despite medical staff providing him with a copy of his medical status sheet that showed these restrictions, correctional officers ignored the requirements, handcuffing Plaintiff behind his back and placing him in a cell where the bottom bunk was already occupied.[11] Plaintiff suffered pain and aggravation to his osteochondroma as a result of being cuffed behind his back.[12] Plaintiff alleges that the medical staff explained that the need to cuff in him the front was documented, that the correctional officers were aware of this need, and that if the correctional officers were not adhering to this requirement, then Plaintiff should utilize the administrative remedy process for further assistance.[13]

Plaintiff filed a "BP-8" form and gave it to Counselor Thrump, who informed Plaintiff that he would look into the matter.[14] After several months, Plaintiff received no response to his grievance form, and alleges that Counselor Thrump would not provide him with a "BP-9" form, the next step in the administrative grievance process.[15]

In or around May 2016, Plaintiff was seen by a chronic care doctor who ordered x-rays as a result of Plaintiff's discussion of the pain he was suffering.[16] On

---

[10] *Id.*
[11] *Id.* Plaintiff notes that due to the kindness of his cellmate, Plaintiff was able to utilize the lower bunk. *Id.*
[12] *Id.* at 2.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

or around June 8, 2019, Plaintiff was transferred to the United States Penitentiary at Allenwood, where he was placed on pain medication due to the aggravation of the osteochondroma.[17] Plaintiff has been on this pain medication since.[18]

In or about December 2016, Plaintiff filed an administrative tort claim with the Federal Bureau of Prisons.[19] That claim was denied on June 15, 2017.[20]

## II. STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief; the complaint must provide the defendant with fair notice of the claim.[21] When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations.[22] The issue in a motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail.[23]

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[22] *See Erickson v. Pardus*, 551 U.S. 89, 94 (per curiam).
[23] *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (the Rule 8 pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[24] The court need not accept unsupported inferences,[25] nor legal conclusions cast as factual allegations.[26] Legal conclusions without factual support are not entitled to the assumption of truth.[27]

Once the court winnows the conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense review of the claim to determine whether it is plausible. This is a context-specific task, for which the court should be guided by its judicial experience. The court must dismiss the complaint if it fails to allege enough facts "to state a claim for relief that is plausible on its face."[28] A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[29] The complaint that shows that the pleader is entitled to relief—or put another way, facially plausible—will survive a Rule 12(b)(6) motion.[30]

---

[24] *Twombly*, 550 U.S. at 555 (alteration in original and internal citations omitted).
[25] *Cal. Pub. Employees Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).
[26] *Twombly*, 550 U.S. at 556.
[27] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).
[28] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
[29] *Iqbal*, 556 U.S. at 678.
[30] *See* Fed. R. Civ. P. 8(a)(2); *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

## III. DISCUSSION

### A. Motion to Dismiss Regarding Timeliness

The Federal Tort Claims Act grants jurisdiction to the federal courts to hear suits against the United States Government for torts committed by its employees while in the scope of their employment.[31] The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated.[32] The FTCA specifically requires an initial presentation of the claim to the appropriate federal agency and a final denial by the agency as a non-waivable prerequisite to the filing of the lawsuit.[33] Once a claimant receives a final denial by the agency, he must then initiate a civil action within six months after the denial: "A tort claim against the United States shall be forever barred . . . unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."[34]

Defendant has moved to dismiss Plaintiff's FTCA claim as time barred. In support of that argument, Defendant argues that the statute of limitations is an affirmative defense which may be raised based on the allegations contained in the complaint, which demonstrate that (1) Plaintiff was obligated to file his FTCA claim

---

[31] *See* 28 U.S.C. § 2675(a).
[32] *See* 28 U.S.C. § 2674.
[33] *See Deutsch v. United States*, 67 F.3d 1080, 1091 (3d Cir. 1995). There appears to be no dispute between the parties that Plaintiff timely presented his administrative claim to the Bureau of Prisons.
[34] 28 U.S.C. § 2401(b).

6

in this court within six months from the June 15, 2017, denial of his administrative claim, and (2) Plaintiff's complaint was postmarked December 21, 2017 and was not docketed by the Court until December 27, 2017, both of which are past the December 15, 2017 filing deadline. Despite Plaintiff's incarceration, Defendant fails to address the application of the prison mailbox rule to the timeliness of Plaintiff's action.

In opposition to the motion to dismiss regarding timeliness, Plaintiff argues that he gave the complaint to the institutional mail room on or about December 14, 2017—before the December 15, 2017 filing deadline—and that the prison mailbox rule applies to the filing of Plaintiff's complaint.[35] According to Plaintiff, "[u]nder this doctrine, a prisoner's pro se complaint is deemed filed when delivered to prison officials for mailing." Finally, Plaintiff notes that he is not required to plead in his complaint facts sufficient to overcome an affirmative defense and that "[i]f the bar is not apparent on the face of the complaint then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."

In reply, Defendant argues that Plaintiff's assertion that he gave his complaint to the institution mail room on December 14, 2017 is not contained in a declaration, verification, or sworn affidavit and that Plaintiff further fails to explain the lapse of

---

[35] Plaintiff also states that "it is a known fact that the volume of mail increase[s] substantially around Christmas which may explain why it took a week or so to reach the court." *See* ECF No. 26 at 9.

7

time between giving the complaint to the mail room on December 14, 2017 and the envelope's postmark of December 21, 2017.

A review of the complaint provides that it is dated "12-13-17" and the certificate of service provides "I Prince Isaac hereby certify that I have caused to be sent the enclosed FTCA Complaint via prepaid United States Postal Service by giving it to C Unit Correctional Offices to be sent to: Clerk of Court, Middle District of Pennsylvania."[36] The certificate of service is signed and dated December 13, 2017, and indicates that it was mailed from Jonesville, Virginia, the location of USP Lee.[37] The Court notes that the envelope in which the complaint was mailed contains a postmark of what appears to be "Knoxville TN December 21, 2017;" there also appears to be another postmark which is illegible to the right of that mark.[38] The timeliness of Plaintiff's complaint therefore hinges on whether the prison mailbox rule applies here.

The Supreme Court of the United States explained the prison mailbox rule in *Houston v. Lack*.[39] Under this rule, the date on which a prisoner transmits a document to prison authorities for mailing would be considered the actual filing date.[40] The Court developed the mailbox rule based on several policy considerations

---

[36] ECF No. 1 at 4, 6.
[37] *Id.* at 6.
[38] ECF No. 1 at 7.
[39] 487 U.S. 266 (1988).
[40] *Id.* at 275 ("[A] *pro se* prisoner has no choice but to hand his notice over to prison authorities for forwarding to the court clerk.").

including (1) that a *pro se* prisoner may only communicate with the district court through prison authorities, (2) that a prisoner is not free to "walk" papers to the district court on the due date, and (3) the need to prevent an intentional delay in transmission by prison authorities.[41] The Court also noted the "well-developed procedures" at federal prisons that record the date and time of prisoner submissions, making reference to prison mail logs a "straightforward inquiry."[42] The rule generally applies absent an explicit requirement that a document be received in order to be considered filed.[43]

The Court finds that Defendant has failed to establish that Plaintiff's FTCA claim is time-barred in light of the allegations in the complaint, which must be accepted as true. The face of the complaint demonstrates that Plaintiff placed his complaint in the prison mailing system on December 13, 2017. In looking at the statutory language of the FTCA regarding filing a timely action in court, there is no requirement that the complaint be received in order for it to be timely filed: "A tort claim against the United States shall be forever barred . . . unless action is begun

---

[41] *Id.* at 274.
[42] *Id.* at 275.
[43] The Supreme Court declined to apply the prison mailbox rule in *Fex v. Michigan*, 507 U.S. 43 (1993), because the specific language of the statute at issue required delivery prior to the expiration of the relevant period of limitation. The Court of Appeals for the Third Circuit has confirmed this distinction, noting that after *Fex*, "[t]he cases that have eschewed application of the prison mailbox rule involved statutory or regulatory schemes that clearly required actual receipt by a specific date." *Longenette v. Krusing*, 322 F.3d 758, 764 (3d Cir. 2003) (holding that in the context of an administrative forfeiture proceeding under the Tariff Act of 1930 "[b]ecause neither the statute nor the regulations require 'actual receipt,' *Houston* mandates the prison mailbox rule's applicability.").

9

within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented."[44] Because there is no explicit requirement that the complaint be received before the expiration of the six-month time period, the Court must apply the prison mailbox rule and accept the complaint as timely filed for the purpose of this motion to dismiss.[45]

The denial of the motion to dismiss will be without prejudice to the extent that Defendant wishes to revisit this issue by filing a motion for judgment on the pleadings or for summary judgment and providing documentation that would refute the dates listed on the complaint, which, as the Supreme Court noted in *Houston*, should be a "straightforward inquiry" into the prison's mail log book.

### B. Motion for Summary Judgment Regarding Negligence Claim

Defendant has, in the alternative, moved for summary judgment arguing that Plaintiff cannot establish as a matter of law that USP Lewisburg employees had a duty to only cuff Plaintiff in the front. In light of the Court's denial of the motion to dismiss, the Court will provide the parties with an opportunity in which to file additional briefing or exhibits regarding the merits of Plaintiff's FTCA claim.

---

[44] This language contrasts to the language regarding presentment of the FTCA claim and other filings to the administrative agency, to which the mailbox rule does not apply. *See Lightfoot v. United States*, 564 F.3d 625, 628 (3d Cir. 2009) ("The plain language of 39 C.F.R. § 912.9(c) is fatal to Lightfoot's contention. The regulation provides that a request for reconsideration is "deemed to have been filed when received in the office of the official who issued the final denial.'").

[45] *Longenette*, 322 F.3d at 764 ("Because neither the statute nor the regulations require 'actual receipt,' *Houston* mandates the prison mailbox rule's applicability.").

The Court will also grant Defendant leave to amend the pending motion for summary judgment to the extent that Defendant wishes to attach exhibits relevant to the timeliness of Plaintiff's action as discussed *supra*. Finally, Plaintiff is notified that a failure to respond to Defendant's statement of material facts as required by Local Rule 56.1 will result in such facts being deemed admitted.[46]

## IV. CONCLUSION

Based on the foregoing, the motion to dismiss will be denied without prejudice and the Court will permit the parties an opportunity to file supplemental briefing and any additional exhibits regarding the motion for summary judgment. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[46] Local Rule 56.1 provides:
A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.
Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.
All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.